Entered on Docket
November 01, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed October 31, 2011

_____
**Stephen L. Johnson
U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>JOANNA GONDA,<br>    Debtor. | Case No. 10-58722<br>Chapter 13 |

**MEMORANDUM DECISION FOLLOWING TRIAL ON CLAIM OBJECTION**

Debtor Joanna Gonda filed her chapter 13 petition on August 23, 2010. On October 8, 2010, Claimant Jasvinder Nijjar filed a proof of claim in the amount of $200,000, for damages arising out of a real estate transaction. Soon after, Joanna Gonda objected to Jasvinder Nijjar's claim (the "Claim Objection").

The court held a trial on July 27, 2011. Laurence McEvoy appeared for debtor; Amiel Wade appeared for the claimant. At the conclusion of trial, the court requested supplemental briefs on the admissibility of Jeff Purcell's deposition testimony. After reviewing the evidentiary record and the briefs submitted, the court concludes that judgment should be entered for debtor.

## I. FACTS[1]

The court makes the following findings of fact after considering the evidence and testimony presented at trial:

    A.    Edgewater Executive Mortgage, Inc. ("Edgewater") is a California corporation doing business as a licensed corporate real estate broker. It does business under various related names, including Executive Realty.

    B.    As required by law, Edgewater designated Debtor Joanna Gonda ("Gonda"), an individually licensed real estate broker, as its designated broker of record. In addition to Gonda being Edgewater's sole designated broker, she is also its vice president and secretary.

    C.    Teresa Purcell, Gonda's daughter-in-law, is Edgewater's sole shareholder, president, and treasurer.

    D.    Edgewater also had other licensed salespeople who operated under the corporation's brokerage license.

    E.    Jeff Purcell ("Purcell") is Gonda's son and Teresa Purcell's husband. Purcell sometimes gave advice to Edgewater salespeople but had no formal role or title at Edgewater.

    F.    Purcell had an individual real estate brokerage license, but he did not associate his license with either Edgewater or Gonda.

    G.    Rick Mirza ("Mirza") was Purcell's associate or friend. He was not employed or associated with Edgewater. He appears to have acted solely as an unlicensed real estate broker or agent, using his own company.

    H.    In 2007, Mohinder and Shivjeet Nijjar decided to sell their real property located at 30971 Granger Avenue in Union City, California ("Union City Property") to Jasvinder Nijjar, Mohinder's brother (collectively, the "Nijjars").

    I.    Because Jasvinder Nijjar needed to borrow money to complete the purchase of the Union City Property, he sought out Mirza to assist as a loan broker. Mohinder and Shivjeet Nijjar had worked with Mirza previously.

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052(a).

MEMORANDUM DECISION
FOLLOWING TRIAL ON CLAIM OBJECTION -2-

Case: 10-58722  Doc# 74  Filed: 10/31/11  Entered: 11/01/11 14:12:11  Page 2 of 14

J. The parties agreed that (1) Jasvinder Nijjar would purchase the Union City Property for $452,000; (2) Jasvinder Nijjar would cover the closing costs and fees for both sides; and (3) Mirza would receive a 0.5% commission for the transaction.

K. At some point, Mirza seemed to have asked Purcell to assist in the transaction.

L. Purcell drafted the Residential Purchase Agreement form (the "Purchase Agreement") for the Nijjars' use. Purcell obtained the Purchase Agreement by printing it from an Edgewater computer.

M. Because the form was obtained from an Edgewater computer, Gonda's name, phone number, and address appear on the first page of the Purchase Agreement.

N. Purcell used the Purchase Agreement without Gonda's authorization.

O. Purcell typed in his own name as the listing and selling agent on the seventh page of the Purchase Agreement. He also typed in his own name (as the "Selling Firm" and "Listing Firm"), individual license number, phone number, and personal email address on the eighth page under the section for Real Estate Brokers. Edgewater's name does not appear in the agreement.

P. Gonda was not aware of the Nijjars' transaction prior to the time the sale closed. She was not personally involved in the transaction.

Q. At some unspecified point, the terms of the sale were altered. The purchase price was increased to $552,000, and the commission was increased to 6%. The commission was made payable to Executive Realty. These revised terms were communicated to the escrow company involved in the sale.

R. When the escrow company closed the sale, it paid the commission of $33,120 (6% of $552,000), to "Executive Realty."

S. The commission was deposited into Edgewater's bank account.

T. Ninety percent of the commission (approximately $29,000) was then paid to Mirza, apparently under a side agreement between Mirza and Purcell.

U. After the close of escrow, the Nijjars discovered the discrepancy between the 0.5% commission they agreed to pay and the 6% actually taken. The Nijjars never agreed to the 6% commission.

V. The Nijjars then contacted Purcell to retrieve the improperly distributed commission funds. Purcell agreed to refund the Nijjars the full commission.

W. On August 1, 2007, Teresa Purcell signed the first Edgewater refund check to the Nijjars for $4,552. On August 3, 2007, Jeff Purcell signed the second Edgewater refund check for $2,000. The money was paid from an account belonging to "Edgewater Executive Mortgage, Inc." and "Teresa & Jeffrey Purcell." No other refund checks were written.

X. Gonda learned about the transaction between the Nijjars and the commission paid to Executive Realty (and Mirza) from Purcell only after the partial refunds were paid to the Nijjars.

Y. In 2009, when Purcell failed to pay the remaining balance, Jasvinder Nijjar sued Edgewater, Purcell, and Mirza in state court.

Z. On July 22, 2009, counsel for the Nijjars took Purcell's deposition. Gonda was present at this deposition but was not a defendant in the state court proceeding at the time. On April 22, 2010, the Nijjars added Gonda as a party defendant in the state court lawsuit.

AA. On October 8, 2010, Jasvinder Nijjar filed a proof of claim, asserting damages arising from the Union City Property sale against Gonda in the amount of $200,000.

## II. DISCUSSION

### A. Legal Standard for Claims Objections

A claim is a "right to payment." 11 U.S.C. § 101(5)(A) (2006). The applicable substantive law in determining the origin and existence of a claim is state law unless the Bankruptcy Code provides otherwise. *In re Sparkman*, 703 F.2d 1097, 1099 (9th Cir. 1983). A creditor's claim, once proof of it has been filed, is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

A properly filed and executed proof of claim "constitutes prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). The burden then shifts to the objecting party to present evidence to overcome the claimant's prima facie case. *In re Murgillo*, 176 B.R. 524, 529 (9th Cir. BAP 1995). The ultimate burden of persuasion is always on the claimant. *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

B. <u>Admissibility of Deposition Testimony of Jeff Purcell</u>

At trial, Jasvinder Nijjar moved to admit into evidence the deposition testimony of Jeff Purcell, taken on July 22, 2009, in the state court proceeding. Gonda objected to its admissibility on the ground that it was hearsay. In response, Jasvinder Nijjar argued that the deposition testimony was admissible as (1) a vicarious admission under Federal Rule of Evidence 801(d)(2)(D), (2) former testimony under Rule 804(b)(1), (3) a statement against interest under Rule 804(b)(3), or (4) a hearsay statement falling within the residual exception under Rule 807. Although Jasvinder Nijjar only wishes to admit designated portions of the deposition, his brief did not specify which specific statements qualify under which hearsay exception. The court will therefore decide the admissibility of the deposition testimony as a whole under each proffered basis.

1. <u>Hearsay Rule</u>

Hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is not admissible at trial. FED. R. EVID. 801(c), 802. However, statements falling within an exemption under Rule 801(d) or within an exception under Rules 803 and 804 may be admissible. The proponent of the statements must prove by a preponderance of the evidence that an exception or exemption applies. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Here, Jasvinder Nijjar seeks to admit Purcell's statements made in a deposition, outside of trial, and is offering them for their truth. The deposition testimony is hearsay, so Jasvinder Nijjar must prove by a preponderance of the evidence that an exemption or exception applies.

2. <u>Vicarious Admission under Rule 801(d)(2)(D)</u>

First, Jasvinder Nijjar argues that the deposition testimony qualifies as a non-hearsay, vicarious admission. A statement by a party's agent concerning a matter within the scope of the agency and made during the existence of the agency relationship is admissible when offered against the party. FED. R. EVID. 801(d)(2)(D). As a preliminary matter, the party offering the statement must show that an agency relationship existed between the declarant and the party, during which time the statement was made. The contents of the agent's statement may be considered, but they alone are insufficient to establish the necessary agency relationship. FED. R. EVID. 801(d)(2). Here,

1  the court finds that there was no agency relationship between Purcell, the declarant, and Gonda, the
2  party in this litigation.

3       To determine whether an agency exists for purposes of Rule 801(d)(2)(D), the court must
4  "'undertake a fact-based inquiry applying common law principles of agency.'" *United States v.*
5  *Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (quoting *NLRB v. Friendly Cab Co.*, 512 F.3d 1090, 1096
6  (9th Cir. 2008)). Here, Jasvinder Nijjar argues that Purcell was an agent of Gonda because she was
7  the designated broker of Edgewater and Purcell was an agent of that corporation. The court finds
8  two problems with this argument. First, Jasvinder Nijjar has not proven that Purcell was an agent of
9  Edgewater under traditional agency principles. Second, an agent of a corporation is not necessarily
10 an agent of the corporation's officers. *See Meyer v. Holley*, 537 U.S. 280, 286 (2003). The party in
11 this litigation is Gonda, not Edgewater. Jasvinder Nijjar must therefore prove that Purcell was an
12 agent of *Gonda* under traditional agency principles. He has failed to establish such a relationship.[2]

13                 3.      <u>Declarant's Unavailability under Rule 804 Exceptions</u>

14       Next, Jasvinder Nijjar asserts that the deposition testimony qualifies as former testimony and
15 as statements against interest, two exceptions under Rule 804. For a hearsay statement to be
16 admissible under a Rule 804 exception, the proponent offering the statement must prove, as a
17 preliminary matter, that the declarant is unavailable as a witness. Under Rule 804(a), a declarant is
18 deemed "unavailable" in only five circumstances, including when he "is absent from the hearing and
19 the proponent of [the] statement has been unable to procure the declarant's attendance . . . by
20 process or other reasonable means." FED. R. EVID. 804(a)(5). Jasvinder Nijjar has failed to prove
21 that Purcell was unavailable under Rule 804(a).

22       The declarant is not considered unavailable unless the proponent of his statement makes a
23 good faith effort to obtain the declarant's presence. *See United States v. Olafson*, 213 F.3d 435, 441
24 (9th Cir. 2000). The proponent's effort must be reasonable. *Id.* Jasvinder Nijjar has not
25 demonstrated a reasonable effort in obtaining Purcell's presence at trial. Jasvinder Nijjar attempted
26 to subpoena Purcell for trial at two incorrect addresses, but the subpoenas were untimely, as they

---

[2] See infra Part II.C.1 for the court's thorough discussion for why no agency relationship exists between Purcell and Gonda.

MEMORANDUM DECISION
FOLLOWING TRIAL ON CLAIM OBJECTION    -6-

were issued only a week before trial. Further, Jasvinder Nijjar, knowing that Purcell was Gonda's son, never contacted Gonda's counsel in order to determine Purcell's correct address for proper service. Because Purcell cannot be considered unavailable under Rule 804(a), the court need not decide whether his deposition testimony is admissible as former testimony or statements against interest.

### 4. Residual Exception under Rule 807

Lastly, Jasvinder Nijjar argues that, even though the deposition testimony constitutes hearsay, it should nevertheless be admitted under the residual exception. A hearsay statement that does not fall within an exception under Rule 803 or 804 but has the equivalent circumstantial guarantees of trustworthiness may be admissible.[3] FED. R. EVID. 807. However, the residual exception is designed for exceptional circumstances and provides the court with a fair degree of discretion whether to admit statements that would otherwise be hearsay. *See Bonds*, 608 F.3d at 500–01 (affirming district court's determination that residual exception did not apply because declarant's refusal to testify was not exceptional circumstance).

Although Purcell testified in a deposition under oath, indicating the testimony's trustworthiness, Jasvinder Nijjar has not provided any basis why this is an exceptional circumstance in which the court should admit Purcell's statements. The simple answer is that Jasvinder Nijjar ought to have timely and properly subpoenaed Purcell to obtain his testimony. Rule 807 cannot substitute for a lack of diligence on this important point.

## C. Gonda's Liability for the Misdeeds of Purcell and Mirza

### 1. Vicarious Liability under Respondeat Superior Doctrine

It is undisputed by the parties that Purcell and Mirza engaged in fraudulent acts that ended with them receiving an improper and undisclosed commission. The issue before this court is whether Gonda is liable for their misconduct. In Jasvinder Nijjar's view, this is a question of

---

[3] Rule 807 further provides that the court must determine that "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

agency. It is important to note that Gonda's participation in the transaction was limited to her name appearing on a form used by Purcell.

An agent is one who represents or acts on behalf of a principal in dealings with third parties. CAL. CIV. CODE § 2295 (1985); RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006). Under traditional agency principles of respondeat superior, a principal can be held vicariously liable to a third party for its agent's torts committed within the scope of the agency relationship. *See* CAL. CIV. CODE § 2338; RESTATEMENT (THIRD) OF AGENCY § 2.04. To determine if Gonda is vicariously liable to Jasvinder Nijjar, the court must first decide whether there was ever an agency relationship between Mirza or Purcell, as agents, and Gonda, as their principal.

An agency relationship may be created by a precedent authorization or subsequent ratification. CAL. CIV. CODE § 2307; *see also* RESTATEMENT (THIRD) OF AGENCY §§ 3.01, 4.01. Under California law, the existence of an agency relationship is generally a question of fact. *In re Nelson*, 761 F.2d 1320, 1322 (9th Cir. 1985); *Brokaw v. Black-Foxe Military Inst.*, 37 Cal. 2d 274, 278 (1951).

### a. Gonda Did Not Authorize Purcell or Mirza to Act on Her Behalf

Agency authorization may be in the form of an express agreement. *See Naify v. Pac. Indem. Co.*, 11 Cal. 2d 5, 12 (1938); *see also* RESTATEMENT (THIRD) OF AGENCY §§ 1.03, 2.01. Alternatively, agency may be implied from the circumstances and conduct of the parties. *See Thayer v. Pac. Elec. Ry. Co.*, 55 Cal. 2d 430, 438 (1961); *see also* RESTATEMENT (THIRD) OF AGENCY §§ 1.03, 2.01.

The evidence shows that Gonda never authorized Purcell or Mirza, either expressly or implicitly, to act either for her or for Edgewater in the transaction with the Nijjars. Purcell and Mirza were never formally employed as salespeople, employees, or agents of Edgewater, and Gonda never recognized them as such. No evidence of written agreements was introduced indicating a formal agency relationship. Gonda was a designated broker with the right to supervise and control Edgewater's salespeople and employees, but she never had the right to control Purcell and Mirza's activities. The absence of this right favors finding no agency relationship. *See Tieberg v. Unemployment Ins. Appeals Bd.*, 2 Cal. 3d 943, 950 (1970) (noting that the most significant factor in

MEMORANDUM DECISION
FOLLOWING TRIAL ON CLAIM OBJECTION     -8-

determining whether there is an agency relationship is the existence of a principal's right to control the agent's activities).

The circumstances and conduct of the parties do not support a finding that Gonda impliedly authorized Mirza or Purcell to act for her. Little information is known about Mirza, even after trial. Based on the transaction, Mirza either worked for or worked with Purcell in some capacity. It is clear though that Mirza was never an agent of Gonda. He was unlicensed, maintained his own business, and transacted on his own behalf and for his own benefit. Jasvinder Nijjar presented no evidence showing that Mirza had ever acted on behalf of Gonda or Edgewater in the past.

The circumstances also do not establish an agency relationship between Purcell and Gonda. Purcell's proximity to Gonda and Edgewater's business was due to his familial relationship with its officers, his wife being the president and treasurer and his mother (Gonda) being the designated broker, vice president, and secretary. To the extent that Purcell was involved in Edgewater's activities, the evidence shows that Purcell's participation was informal. Nijjar presented no evidence showing that Purcell acted on behalf of Edgewater in any prior real estate transactions. Rather, as Gonda testified, Purcell only provided casual advice to Edgewater's salespeople, which is insufficient to establish an agency relationship. *See Edwards v. Freeman*, 34 Cal. 2d 589, 591–92 (1949) (stating that performance of a "mere favor for another, without being subject to any legal duty of service and without assenting to any right of control" cannot support finding of agency); *Violette v. Shoup*, 16 Cal. App. 4th 611, 620 (1993) ("A person does not become the agent of another simply by offering help or making a suggestion.").

The truth is Gonda had no knowledge of Purcell and Mirza's conduct. Her involvement was limited to the appearance of her name and information on the front of the Purchase Agreement, but this only proves that Purcell printed out and used a form with Gonda's name on it. Her information appeared on the Purchase Agreement only because it was included as the default for that form. No evidence was presented showing that Gonda actually participated in the transaction by signing her name, listing herself as the broker, or acknowledging the transaction. Edgewater's name also does not appear on the form. Because he listed his own license number, and not Gonda's, on the Purchase Agreement, the court concludes that Purcell intended only to act as a broker on his own

behalf.

The only facts supporting Jasvinder Nijjar's position in finding agency authorization are that Purcell's name appears on the Edgewater checks given to Jasvinder Nijjar and that Purcell himself signed the second refund check. While these facts do raise some questions about Edgewater's corporate practices, they are ultimately immaterial in this case because they do not establish an agency relationship with Gonda. At best, assuming that Purcell did have the authority to write and sign an Edgewater check, this only proves that Purcell acted as some kind of employee for Edgewater. Purcell's ability to write an Edgewater check is not indicative of an agency with Gonda with respect to the Nijjars' transaction.

Absent any evidence showing that Gonda authorized Mirza or Purcell to engage in the transaction on her behalf, the court cannot find an agency relationship established by precedent authorization.

### b. Gonda Did Not Ratify Purcell or Mirza's Acts

Next, Jasvinder Nijjar argues that by receiving the $33,120 commission in Edgewater's bank account, Gonda ratified the transaction, accepting the benefit of Mirza and Purcell's unauthorized transaction. An agency may also be created by subsequent ratification. CAL. CIV. CODE § 2307; RESTATEMENT (THIRD) OF AGENCY § 4.01. "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which . . . is to treat the act as if originally authorized by him." *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972); *accord* RESTATEMENT (THIRD) OF AGENCY §§ 4.01, 4.02. It "can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof." CAL. CIV. CODE § 2310; *accord* RESTATEMENT (SECOND) OF AGENCY §§ 98, 99 (1958). Although Edgewater did receive the commission, the court finds two issues with the supposed ratification: (1) Mirza and Purcell never intended to act on behalf of Edgewater or Gonda, only acting for their own benefit; and (2) Gonda had no knowledge about the transaction when Edgewater received the funds.

### i. Agent Purportedly Acting on Behalf of a Principal

"A principal cannot ratify the act of the alleged agent, unless the 'agent' purported to act on behalf of the principal." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 961–62 (2002) (citing *Watkins v. Clemmer*, 129 Cal. App. 567, 570–71 (1933)) (finding that merchants' use of Visa's logo and trademark in illegal solicitations did not make them agents of Visa); *accord* RESTATEMENT (THIRD) OF AGENCY § 4.03. As discussed above, the evidence shows that Purcell and Mirza acted only on their own behalf, and not on behalf of Gonda or Edgewater. Before the close of escrow on the transaction, Edgewater or Gonda's names were never mentioned to the Nijjars. The Nijjars never heard their names and never had reason to believe Mirza and Purcell were affiliated with any other party until after the transaction had occurred. The first page of the Purchase Agreement did show Gonda's name and information, but, as discussed earlier, the form used had her name set as the default. When additional information was later filled in, it showed that Purcell acted on his own behalf and for his own benefit by using only his own name and his individual brokerage license number and by excluding any reference to Edgewater or Gonda. It is clear that Mirza and Purcell had no intention of representing Edgewater or Gonda in the transaction.

### ii. Principal's Knowledge of Material Facts

To be held liable for an agent's unauthorized act, a principal must also have knowledge of the material facts involved at the time of the alleged ratification. *See Rakestraw*, 8 Cal. 3d at 74 (citing *Chastain v. Belmont*, 43 Cal. 2d 45, 58 (1954)); RESTATEMENT (THIRD) OF AGENCY § 4.06; *see also* CAL. CIV. CODE § 2314 (permitting rescission of ratification if made with imperfect knowledge of material facts). At the time Edgewater received the commission funds in its bank account, Gonda still had no knowledge of two material facts, the actual transaction itself and its potential illegality.

Although Gonda did not affirmatively act when Purcell informed her about the situation, this was not her ratification of the transaction. At that moment, there was nothing that Gonda could have done to rectify the situation. Edgewater received the $33,120 commission, and 90% of that was paid out to Mirza (a separate transaction that Gonda also had no prior knowledge of), leaving Edgewater with only 10%, or $3,312. Two refund checks totaling $6,552 were already paid out to Jasvinder

Nijjar, an amount greater than the 10% left for Edgewater. At the time that Gonda learned about the events that transpired, Edgewater no longer retained any benefit from the transaction. Therefore, Gonda's failure to act, in this particular circumstance, did not constitute her ratification of the transaction.

In conclusion, the court finds that no agency relationship between Gonda and Purcell or Mirza was established by either precedent authorization or subsequent ratification.[4]

### 2. Vicarious Liability as a Designated Broker of Record

Finally, Jasvinder Nijjar argues that under California law, Gonda is personally liable because she is Edgewater's designated broker. The relevant statute, California Business & Professions Code § 10159.2, provides that the designated broker of record

> shall be responsible for the supervision and control of the activities conducted on behalf of the corporation by its officers and employees as necessary to secure full compliance with the provisions of this division, including the supervision of salespersons licensed to the corporation in the performance of acts for which a real estate license is required.

CAL. BUS. & PROF. CODE § 10159.2(a) (2008). While the statute does place a special duty on designated brokers, the statute is only part of a greater regulatory scheme, subjecting a broker to disciplinary action such as suspension or revocation of his or her license. *See In re Grabau*, 151 B.R. 227, 231–32 (N.D. Cal. 1993) (discussing § 10159.2 and how it fails to create a private cause of action); *see also* CAL. BUS. & PROF. CODE § 10177(h). This case does not involve discipline.

Jasvinder Nijjar's argument fails to consider the Ninth Circuit's decision in *Holley v. Crank*, 400 F.3d 667 (9th Cir. 2005), which the court finds to be the controlling authority on the issue. Essentially, Jasvinder Nijjar argues that Gonda, as designated broker, automatically steps into the shoes of Edgewater, so that if Edgewater were vicariously liable for Purcell or Mirza's tortious acts, Gonda would be as well. That is not necessarily true. Rather, *Holley* provides that § 10159.2 may impose vicarious liability on a designated broker only if there was an agency relationship between the broker and the tortfeasor-employee. 400 F.3d at 671, 673–74; *see also Nevis v. Wells Fargo Bank*, No. C 07-02568 MHP, 2009 WL 1458042, at *4 (N.D. Cal. May 26, 2009) (requiring a

---

[4] As this court finds that there was no agency relationship, there is no need to determine whether Mirza or Purcell's misconduct was within the scope of their agency.

MEMORANDUM DECISION
FOLLOWING TRIAL ON CLAIM OBJECTION        -12-

finding of an actual agency relationship between employee and designated broker to impose vicarious liability). In such a situation, a principal's vicarious liability for its agent's torts will be determined by traditional agency principles, not only by the principal's right or duty to control an agent. *Holley*, 400 F.3d at 670–71; *see also Meyer*, 537 U.S. at 291. As discussed extensively above in Part II.C.1, no such agency relationship existed between Gonda and Purcell or Mirza under common law or California's agency law. Therefore, the court finds that California Business & Professions Code § 10159.2 is inapplicable to Gonda, an uninvolved designated broker of record.

### III. CONCLUSION

For the reasons identified above, Debtor Joanna Gonda's Claim Objection is sustained. Claimant Jasvinder Nijjar's claim is disallowed in its entirety.

**\*\*\*\* END OF ORDER \*\*\*\***

<u>Court Service List</u>

[by ECF]

Laurence J. McEvoy
Law Offices of Clayton and McEvoy
333 W Santa Clara St. #950
San Jose, CA 95113

Amiel L. Wade
Wade & Silverstein
8080 Santa Teresa, Suite 240
Gilroy, CA 95020